DÍAZ, PLAINTIFF AND APPELLANT, *v.* PLAZUELA SUGAR COMPANY, DEFENDANT AND APPELLEE.

APPEAL from the District Court of San Juan in an Action for Subrogation.

No. 2279.—Decided April 12, 1921.

SUBROGATION OF COHEIR—BURDEN OF PROOF.—Although in accordance with section 1034 of the Civil Code the grantee ·must prove that the heir seeking to redeem the property had knowledge· of the sale more than a month before he brought the action for subrogation, in this case the direct and circumstantial evidence was so strong that the burden of proof was shifted to the plaintiff.

ID.—ID.—EVIDENCE—DISCRETION OF COURT.—Although a witness may not have been flatly or· directly contradicted, the trial court need not necessarily believe him.

The facts are stated in the opinion.

*Mr. L. Llorens Torres* for the appellant.

*Mr. J. Martínez Dávila* for the appellee.

MR. JUSTICE WOLF delivered the opinion of the court.

Section 1034 of the Civil Code provides:

"If any of the heirs should sell his hereditary rights to a stranger before the division, all or ·any of the coheirs may subrogate himself in the place of the purchaser, reimbursing him for the value of the purchase, provided they do so within the period of a month, to be counted from the time they were informed thereof."

Luis F. Díaz Llenza filed a complaint against the Plazuela Sugar Company, seeking to take advantage of the privilege of said section, inasmuch as a brother of the appellant named Bonocio had made a sale to the said corporation of his hereditary share in the estate of his father. The parties are agreed that this appeal principally involves a single question, namely, whether the appellant was advised of said sale more than a month before the filing of the complaint.

This sale, although made on the 5th of June, 1915, was not recorded until much later, namely, on November 5, 1918. The original complaint bears date December 4, 1918, and collaterally, as therein indicated, a due consignation was made

of the money to recover the alleged hereditary share of the appellant's brother, supposing such privilege was in fact available to the appellant.

The question is a little involved inasmuch as Bonocio as well as his brothers and sisters had within recent times inherited both from their mother and their father and also because in some of the correspondence in the case it is the firm of Balseiro & Giorgetti that appears to be acting and not the Plazuela Sugar Company.

Complainant and appellant testified that his first knowledge of the sale came through his visit to the Registry of Property of Arecibo on November 5, 1918, the very day on which record of the sale was made. He received a letter telling him of the fact of the sale and went with his lawyer to the registry to ascertain the truth of the information. He maintains that the burden was on the appellee to show that the appellant knew of the sale as of a date prior to said November 5, 1918. The appellee accepted the burden and obtained judgment.

A deed bearing date July 1st, 1915, was offered in evidence wherein eight brothers and sisters of Bonocio gave a power of attorney to another brother, Rafael, to recover of Balseiro & Giorgetti the rent of the farm Higüerito which the said brothers and sisters, as recited in the deed, owned in common by inheritance, at different dates, from their mother and father, the farm having been community property. Bonocio did not appear in the deed. The complaint shows that there are just ten brothers and sisters, the eight giving the power, the attorney in fact, Rafael, and likewise Bonocio. The absence of Bonocio from the deed was a circumstance tending to show that his brothers and sisters knew that he had sold all his interests in Higüerito.

The notary who drew the deed was called to the stand. He testified that at the time of its execution he advised all

the parties that Bonocio had sold his rights (in Higüerito) to Balseiro & Giorgetti (*sic*); that Bonocio made the deed to Plazuela Sugar Company, witness acting as notary, and in that deed Epifanio Fernández appeared representing Balseiro & Giorgetti (*sic*). The deed to Plazuela Sugar Company shows that Vanga appeared for that company. Cross-examined, the witness was not absolutely sure that the appellant was present when he made his statement to the heirs, but he thought they were all there. He did not remember that the appellant left the office to obtain witnesses. Appellant, however, when called to the stand, said that no such statement was made in his presence and that he went out to get the witnesses.

The principal bit of evidence in the case is a letter written by the appellant to Balseiro & Giorgetti, which letter the record tends to show was written on May 13, 1918. The exact date is immaterial, as the whole evidence tends conclusively to show that it was written about that time. Appellant had at various times represented his brothers and sisters in their dealing with regard to Higüerito. He admitted on the stand that also on occasions, if not generally, he had represented Bonocio. Balseiro & Giorgetti, lessees of Higüerito, were bargaining with the appellant about the rent to be paid for the said property. In the letter the appellant wrote, among other things:

"As to your statement that our property Higüerito contains only 99.45 acres, we must stigmatize this as absolutely untrue, since we, the undersigned and sole co-owners thereof, know that, as shown by our plan recently made, Higüerito is composed of 117 *cuerdas*, not including those formerly belonging to Bonocio, of which 117 *cuerdas* 112 are under cultivation, which we can prove if you think proper. As to the assertion that you are the ones who pay the highest rents, we would say that you may think so, but to show that you are wrong we would state that Messrs. Fantauzzi are paying José A. Díaz $30 por *cuerda*."

The letter is signed Sucs. de M. Díaz Fonseca, L. F. Díaz Llenza, *apoderado general.*

With the preceding proof the direct and circumstantial evidence was so strong that the burden of proof was shifted from the appellee to the appellant.  His principal contention was that at all times he was speaking of the maternal share belonging to Bonocio which had been previously transferred to Balseiro & Giorgetti.  As we have indicated, however, the letter was signed "Sucs. de M. Díaz Fonseca" which was the name of the appellant's father and not of his mother. Within a family and the intimacy between brothers as shown in the case, it would almost be presumed that a sale of.an integral part of an estate in which all were interested would be circulated about.

Likewise the appellant was a witness for the appellee. When asked why Bonocio did not appear in the power of attorney to Rafael he said that he did not know, and that some of his other brothers or sisters did not appear.  The proof, as we have seen, tends to show that all except Bonocio appeared.  Likewise when asked about a letter written to him by Balseiro & Giorgetti he said he had no recollection of such a letter, but his attorney had him explain that such a letter was in the possession of the attorney.

We can see that the appellant may be absolutely truthful, but there was such a conflict in the direct and circumstantial evidence that we cannot disturb the finding of the court below.  That court, of course, had a right to disbelieve the appellant as a witness.

Appellant also maintained error in sustaining a demurrer to the complaint, but conceded that he waived that error by filing an amended complaint.  The judgment must be

*Affirmed.*

Chief Justice Hernández and Justices Del Toro, Aldrey and Hutchison concurred.